UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        Case No. 19-20569

v.                                          Honorable Thomas L. Ludington

ROBIN LEE JOHNSON,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

On November 14, 2019, Defendant Robin Lee Johnson pled guilty to transmitting threatening communications in violation of 18 U.S.C. § 875(c). ECF No. 32. She was sentenced to 27 months imprisonment. ECF No. 41. She is currently housed at Federal Medical Center, Carswell ("FMC Carswell") in Fort Worth, Texas.

On August 17, 2020, Defendant moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 44. The motion was denied without prejudice for failing to include evidence of exhaustion. ECF No. 46. Defendant refiled the Motion on October 26, 2020 and included evidence of exhaustion. ECF No. 47. Plaintiff, the United States of America (the "Government"), responded on November 4, 2020. ECF No. 48. On November 19, 2020, Defendant moved for the appointment of counsel, stating that she had "received a copy of the [Government's] response" and "would like a[n] attorney." ECF No. 50 at PageID.235. Defendant's Motion for Appointment of Counsel was denied, but she was granted additional time to file a reply brief. ECF No. 51. Her reply brief was finally filed on December 31, 2020. ECF No. 53. For reasons stated below, Defendant's Motion for Compassionate Release will be denied.

**I.**

> The United States is facing an unprecedented challenge with the COVID-19 pandemic.
>
> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death.

*Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). In light of the threat posed by COVID-19, Defendant seeks a reduction of her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for

compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at *9.

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust her administrative remedies with the Bureau of Prisons ("BOP") or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). As proof of exhaustion, Defendant attached a letter from the warden dated September 21, 2020 stating that "[Defendant's] concern about being potentially exposed to, or possibly contracting, COVID-19 does not warrant early release from [her] sentence [under 18 U.S.C. § 3582(c)(1)(A)]." ECF No. 47 at PageID.208. While it is unclear when Defendant sent her request to the warden, the letter constitutes sufficient evidence of exhaustion. Accordingly, Defendant has exhausted her administrative remedies with the BOP.

**B.**

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant moves for compassionate release on her own behalf, § 1B1.13 is "inapplicable," and [u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an

- 3 -

'extraordinary and compelling' reason justifies compassionate release." *Jones*, 980 F.3d at 1109. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling, such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Despite the lack of express guidance, *Jones* suggests that an inmate may have an extraordinary and compelling reason for release where he suffers from a medical condition identified as a risk factor for COVID-19. *See id.* at *2 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See, e.g.*, *United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See United States v. Elias*, No. 20-3654, 2021 WL 50169, at *3 (6th Cir. Jan. 6, 2021). Under the two-part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."[1] *Id.* (quoting *United States v. Hardin*, No.

---

[1] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 2021 WL 50169, at *4 n.1.

19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at *4.

Defendant is a 59-year-old woman who suffers from chronic obstructive pulmonary disease ("COPD"), asthma, hypertension, and obesity, among other medical conditions. ECF No. 47 at PageID.205. Defendant is prescribed supplemental oxygen and uses a portable oxygen tank. *Id.* at PageID.200. The CDC states that persons suffering from COPD and obesity are at an increased risk of developing COVID-19 complications. *See People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/G7WV-SBCK] (last visited Jan. 19, 2021). Similarly, persons suffering from hypertension and asthma "might" be at an increased risk. *Id.* Currently, FMC Carswell is experiencing a COVID-19 outbreak, with 27 inmates and three staff members reporting active infections. *See COVID-19*, BOP, https://www.bop.gov/coronavirus/ [https://perma.cc/V2S2-9NYQ] (last visited Jan. 19, 2021). Under these circumstances, Defendant has an extraordinary and compelling reason for release.

## C.

As stated previously, there is no "applicable policy statement" in this case because Defendant, not the BOP, has moved for compassionate release. Consequently, step two of the § 3582(c)(1)(A) analysis is skipped, and the final issue is whether a sentence reduction is warranted by the applicable factors set forth in § 3553(a). *See Jones*, 980 F.3d at 1108. The factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

>  (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
>  (5) any pertinent policy statement…
>
>  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "District judges maintain an 'obligation to provide reasons' in both sentencing-modification decisions, and traditional sentencing decisions." *Jones*, 980 F.3d at 1112.

> District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision. But as long as the record as a whole demonstrate that the pertinent factors were taken into account by the district court, a district judge need not specifically articulate its analysis of every single § 3553(a) factor.

*Id.* at *11 (internal quotations and citations omitted). Here, the two most pertinent factors are the "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed." 18 U.S.C. §§ 3553(a)(1)–(2). In this case, both factors weigh heavily against a sentence reduction.

Defendant's Presentence Investigation Report ("PSR") reveals a lengthy criminal history, including home invasion (1995), escaping from prison (1996), resisting arrest (2004), and false pretenses (2008). While her criminal history is largely nonviolent, Defendant has repeatedly shown

her disregard for supervision. For instance, after Defendant was paroled for a 1995 home invasion conviction, she absconded from or violated her parole over a dozen times. Defendant attributes her poor compliance to substance abuse, which she claims to have resolved.[2] *See* ECF No. 53 at PageID.242. Even so, Defendant's demonstrated failure to conform with supervision weighs heavily against early release.

Moreover, early release would be inconsistent with the severity of the underlying offense and Defendant's representations since conviction. In October 2018, Defendant's son strangled, suffocated and assaulted his girlfriend, C.J., in the presence of C.J.'s young daughters. While Defendant's son was in custody, he directed Defendant to harass C.J. on social media. Defendant subsequently wrote threatening messages on Facebook referring to C.J. as a "dark evil snake" and "whore." On May 16, 2019, Defendant posted an image of her son on Facebook with the following message:

> You take mine? I take YOURS, EYE FOR AN EYE! This is my first born. Do you have a first born? Son for son. Daughter for son? Trade for trade I'm not GOD. I AM A MOTHER! WORSE THAN GODS WRATH! KNOW THAT!

ECF No. 32 at PageID.107 (sic throughout). Defendant called her son later that day and told him that C.J. would "understand what [she] mean[t]."

Rather than accept any responsibility for her conduct, Defendant has stated that she regrets pleading guilty, ECF No. 44 at PageID.177, and flatly denies having threatened any children. ECF No. 53 at PageID.242. She instead suggests that the Government has conspired against her. *Id.*

---

[2] In her reply brief, Defendant claims that she was addicted to cocaine until 2009. ECF No. 53 at PageID.242. However, according to the PSR, Defendant told the presentence interviewer that she was sober for seven years until June 2019, when she tested positive for cocaine. Defendant nonetheless told the interviewer that she did not require substance abuse counseling. Defendant was administered the Texas Christian University Drug Screen V and scored in the low-risk category for drug dependence.

The Government indicates that Defendant's projected release is not until September 2021. ECF No. 48 at PageID.213. Based on the foregoing, the remaining portion of Defendant's term is necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Defendant's Motion for Compassionate Release will be denied.

## II.

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 47, is **DENIED**.


Dated: January 22, 2021					s/Thomas L. Ludington
							THOMAS L. LUDINGTON
							United States District Judge


PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Robin Johnson** #57525-039, Federal Medical Center Carswell, P.O. Box 27137, Fort Worth, TX 76127 by first class U.S. mail on January 22, 2021.

					s/Kelly Winslow
					KELLY WINSLOW, Case Manager